**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
Josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Additional Attorney On Signature page]

*Attorneys for Plaintiff,*
Shahriar Noorparvar

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHAHRIAR NOORPARVAR, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiff,<br>v.<br><br>**UBER TECHNOLOGIES, INC.,**<br><br>Defendant. | Case No.:<br><br>**<u>CLASS ACTION</u>**<br><br>**Complaint for Damages and Injunctive Relief Pursuant To The Telephone Consumer Protection Act, 47 U.S.C § 227 et seq.**<br><br>**Jury Trial Demanded** |

**CLASS ACTION COMPLAINT**

## INTRODUCTION

1. SHAHRIAR NOORPAVAR ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of UBER TECHNOLOGIES, INC. ("Defendant" or "Uber"), in negligently and/or intentionally contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11.

4. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy

invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

5. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call..." *Id.* at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744.

6. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

7. According to the Federal Communications Commissions' November 29, 2012 Declaratory Ruling, 27 F.C.C.R. 15391, 27 FCC Rcd. 15391, 57 Communications Reg. (P&F) 107, 2012 WL 5986338 (Nov. 29, 2012), in response to a request to opt-out of receiving further text messages on one's cellular telephone by texting the word "Stop" or something similar, a person or entity is permitted to send in response a one-time text message confirming the opt-out request, as long as the so-called "confirmatory" text message does not attempt to convince the consumer to reconsider his or her opt-out request or contain marketing, and is sent within five minutes of the opt-out

request.

8. The Ninth Circuit recently affirmed certification of a TCPA class action similar to this one in *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 2012 WL 4840814 (9th Cir. Oct. 12, 2012).

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b) because Plaintiff resides in the State of California, the harm to Plaintiff occurred in the State of California, Plaintiff is a resident of the State of California and the County of Los Angeles, and Defendant is subject to personal jurisdiction in the County of Los Angeles and within this judicial district because it conducts business there.

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California and the County of Los Angeles. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

12. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein was, a Delaware corporation whose primary corporate address is in California.

13. Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

14. Defendant is a nationwide passenger transportation service, connecting riders and drivers through a mobile telephone application.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

15. Plaintiff alleges that at all times relevant herein, Defendant conducted business in the State of California and in the County of Los Angeles, and within this judicial district.

## FACTUAL ALLEGATIONS

16. At all times relevant, Plaintiff was a citizen of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

17. Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153 (39).

18. At all times relevant Defendant conducted business in the State of California and in the County of Los Angeles, and within this judicial district.

19. Sometime on or before December 31, 2013, Plaintiff signed up with Uber via the Uber mobile application on Plaintiff's cellular telephone.

20. On or about December 31, 2013, at approximately 6:58 p.m., Uber responded to plaintiff with a text message using short message script ("SMS") 89203 stating as follows:

> Thanks for signing up for Uber, shawn! Reply GO to confirm your #. Reply HELP or call 866-576-1039. Std msg rates may apply.

21. Plaintiff responded to this text message by texting "Go" to confirm Plaintiff's telephone number at approximately 9:34 p.m. on or about December 31, 2013.

22. Following Plaintiff's response, Uber replied with a welcome message at approximately 10:05 p.m. on or about December 31, 2013, which provided instructions to stop receiving future text messages as follows:

> Welcome to Uber Alerts! Use our iPhone/Android/BB apps to request a ride. Reply STOP to stop. 8665761029/uber.com. Std msg rates may apply.

23. At approximately 10:06 p.m. on or about December 31, 2013, Uber sent Plaintiff a text message stating:

> Hi shawn, we can't find an Uber for you at this time. Sorry for the inconvenience. Please try again soon!

24. Plaintiff immediately received an identical text message from Uber at approximately 10:06 p.m. on or about December 31, 2013.

25. Uncertain whether Uber would continue to send Plaintiff additional text messages identical to the text messages alleged in Paragraphs 23 and 24, and with the appearance that Uber was not going to be able to find a car for Plaintiff that evening, Plaintiff replied with a text message stating "Stop" on or about December 31, 2013, at approximately 10:07 p.m., in order to opt out of receiving further text messages from Uber.

26. By sending this "Stop" text message to Uber, which was Plaintiff's request to opt-out of receiving further text messages from Uber, Plaintiff revoked any and all express consent that Uber may have had to contact Plaintiff on Plaintiff's cellular telephone number, including by text message.

27. Uber then responded to Plaintiff's "Stop" text message with a text message at approximately 10:42 p.m. on or about December 31, 2013, stating:

> Uber Alerts: To stop text confirmations, please confirm your request by texting YES.

28. This text message from Uber was not confirming Plaintiff's opt-out request; to the contrary, this text message from Uber was an attempt to convince Plaintiff to reconsider Plaintiff's opt-out request.

---

**CLASS ACTION COMPLAINT**                                      PAGE 5 OF 15

29. Subsequently, in a further attempt to stop receiving messages from Uber, Plaintiff replied to the latest text message from Uber (as alleged in Paragraph 27) with a text message stating "Yes", on or about January 30, 2014, at approximately 6:22 p.m.

30. In response to this "Yes" text message from Plaintiff, Uber then sent Plaintiff an additional text message on or about January 30, 2014, at approximately 6:24 p.m., stating:

> Sorry, but we could not locate your Uber request. Please text a proper street address with city. Text HELP or visit support.uber.com for more help

31. This text message from Uber was also not confirming Plaintiff's opt-out request.

32. In a further attempt to stop receiving text messages from Uber, Plaintiff replied to this text message from Uber with a text message stating "Stop" on or about January 30, 2014, at approximately 6:24 p.m.

33. In response to this text message from Plaintiff, Uber sent a text message to Plaintiff's cellular telephone on or about January 30, 2014, at approximately 6:24 p.m., stating:

> Uber Alerts: To stop text confirmations please confirm your request by texting YES.

34. In response to this text message from Uber, Plaintiff responded with a text message stating "Yes" on or about January 30, 2014, at approximately 6:24 p.m.

35. Finally, in response to this "Yes" text message from Plaintiff, Uber sent Plaintiff a text message on or about January 30, 2014, at approximately 6:25 p.m., stating:

> Okay you are opted out and will not receive texts from Uber Alerts. To receive texts again, please text GO or visit uber.com

36. This last text message from Uber was confirming Plaintiff's opt-out request, and was the first and only text message from Uber that confirmed Plaintiff's opt-out request despite several attempts by Plaintiff to stop further text messages from Uber.

37. Each of these text messages was sent and received using SMS 89203, which is the short message script assigned to and/or used by Uber.

38. The telephone number for Plaintiff that Uber sent text messages to was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1).

39. The last four digits of Plaintiff's cellular telephone number are "0101".

40. The text messages from Uber or its agent constituted calls that were not for emergency purposes as defined by 47 U.S.C. §227 (b)(1)(A)(i).

41. Defendant sent these text messages via an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

42. This ATDS utilized by Defendant has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

43. This ATDS utilized by Defendant also has the capacity to automatically dial telephone numbers from a list or database of telephone numbers without human intervention.

44. The text messages from Uber also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. § 227(a)(1).

45. The text messages sent utilizing an automatic telephone dialing system and/or an artificial or prerecorded voice alleged in Paragraphs 27, 30 and 33

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

from Defendant or its agent to Plaintiff's cellular telephone were sent without Plaintiff's "prior express consent."

46. Having sent Uber an opt-out text message with the word "Stop" on or about December 31, 2013, it was not until Plaintiff sent Uber several additional text messages that Uber then sent Plaintiff a "confirmatory" text message, or in other words, a text message confirming Plaintiff's request to stop receiving further text messages from Uber.

47. Plaintiff alleges that each text message from Uber violated 47 U.S.C. § 227(b)(1), except for the text messages alleged in Paragraphs 20, 22, 23 and 24.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class").

49. Plaintiff represents and is a members of the Class, which includes:

> All persons within the United States who sent a text message with the word "Stop" to short message script 89203 and in response received a text message from short message script 89203 utilizing an automatic telephone dialing system and/or an artificial or prerecorded voice stating "Uber Alerts: To stop text confirmations, please confirm your request by texting YES" within the four years prior to the filing of the Complaint in this action.

50. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the members of the Class number in the tens of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

51. Plaintiff also brings this action on behalf of himself and on behalf of all others similarly situated (the "Sub-Class").

52. Plaintiff represents and is a member of the Sub-Class, which includes:

> All persons within the United States who sent a text message with the word "Stop" to short message script 89203 and in response received a text message from short message script 89203 utilizing an automatic telephone dialing system and/or an artificial or prerecorded voice stating "Uber Alerts: To stop text confirmations, please confirm your request by texting YES", who subsequently sent a text message with the word "Yes" to short message script 89203 and in response received a text message from short message script 89203 utilizing an automatic telephone dialing system and/or an artificial or prerecorded voice stating "Sorry, but we could not locate your Uber request. Please text a proper street address with city. Text HELP or visit support.uber.com for more help" within the four years prior to the filing of the Complaint in this action.

53. Plaintiff and members of the Class and Sub-Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its agents, illegally contacted Plaintiff and the members of the Class and Sub-Class via their cellular telephones by sending one or more text messages without prior express consent, thereby causing Plaintiff and the members of the Class and Sub-Class to incur certain cellular telephone charges or reduced cellular telephone time for which Plaintiff and the members of the Class and Sub-Class previously paid, and invading the privacy of said Plaintiff and members of the Class and Sub-Class. Plaintiff and the members of the Class and Sub-Class were damaged thereby.

54. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and Sub-Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand or modify the Class and Sub-Class

definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

55. The joinder of the Class and Sub-Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class and Sub-Class can be identified through Uber's records, Uber's agent's records and/or by public notice, especially since members of the Class and Sub-Class provided their contact information such as email address to Uber in order to sign up for Uber's service.

56. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class and Sub-Class predominate over questions which may affect individual members of the Class and Sub-Class, including but not limited to the following:

   a. Whether, within the four years prior to the filing of this Complaint, Defendant or its agent sent any text message stating "Uber Alerts: To stop text confirmations, please confirm your request by texting YES" in response to receiving a text message stating "Stop" from a member of the Class using any automatic telephone dialing and/or texting system to any telephone number assigned to a cellular telephone service;

   b. Whether the text message stating "Uber Alerts: To stop text confirmations, please confirm your request by texting YES" in response to an opt-out text message (i.e., a "Stop" text message) was an attempt by Defendant and/or its agent to convince the Class member to reconsider their opt-out request;

   c. Whether, within the four years prior to the filing of this Complaint, Defendant or its agent sent any text message stating "Sorry, but we

could not locate your Uber request. Please text a proper street address with city. Text HELP or visit support.uber.com for more help" in response to receiving a text message stating "Yes" from a member of the Sub-Class using any automatic telephone dialing and/or texting system to any telephone number assigned to a cellular telephone service;

    d. Whether the text message stating "Sorry, but we could not locate your Uber request. Please text a proper street address with city. Text HELP or visit support.uber.com for more help" in response to a text message stating "Yes" was sent knowingly or willfully by Defendant and/or its agent;

    e. Whether the text messages from Uber constitute an artificial or prerecorded voice pursuant to 47 U.S.C. § 227(b)(1);

    f. Whether Plaintiff and members of the Class and Sub-Class were damaged thereby, and the extent of damages for such violation; and

    g. Whether Defendant and/or its agent should be enjoined from engaging in such conduct in the future.

57. As a person who received a text message stating "Uber Alerts: To stop text confirmations, please confirm your request by texting YES" in response to a "Stop" text message instead of a text message confirming the person's opt-out request without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

58. As a person who received a text message utilizing an automatic telephone dialing system and/or an artificial or prerecorded voice stating "Sorry, but we could not locate your Uber request. Please text a proper street address with city. Text HELP or visit support.uber.com for more help" in response to

a "Yes" text message instead of a text message confirming the person's opt-out request without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the Sub-Class. Plaintiff will fairly and adequately represent and protect the interests of the Sub-Class in that Plaintiff has no interests antagonistic to any member of the Sub-Class.

59. Plaintiff and the members of the Class and Sub-Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Plaintiff and members of the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual claims of members of the Class and Sub-Class, few, if any, members of the Class and Sub-Class could afford to seek legal redress for the wrongs complained of herein.

60. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

61. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of members of the Class and Sub-Class in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims for unlawful text messages is likely to present significantly fewer difficulties than those presented in many class claims.

62. Defendant has acted on grounds generally applicable to the Class and Sub-Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class and Sub-Class.

63. Plaintiff anticipates providing notice to the Class and Sub-Class by direct mail notice in the form of a post card, internet website, email, and/or other reasonable and appropriate forms of notice.

## FIRST CAUSE OF ACTION

### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. § 227 ET SEQ.

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

66. As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq., Plaintiff, the Class and Sub-Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

67. Plaintiff, the Class and Sub-Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227 ET SEQ.

68. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

70. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff, the Class and Sub-Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

71. Plaintiff, the Class and Sub-Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff, the members of the Class and Sub-Class the following relief against Defendant:

### FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each member of the Class and Sub-Class $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

### SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each member of the Class and Sub-Class $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

///

## TRIAL BY JURY

72. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 11, 2014

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: __/s/ Abbas Kazerounian__
ABBAS KAZEROUNIAN, ESQ.
ATTORNEYS FOR PLAINTIFF

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@attorneysforconsumers.com
369 S. Doheny Dr. #415,
Beverly Hills, CA 90211
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
*Attorneys for Plaintiff*